JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Donald King, appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas, Criminal Division, where he was found guilty of felonious assault, in violation of R.C. 2903.11, and sentenced to three years of incarceration.
 {¶ 2} The instant matter stems from events which occurred on the night of June 30, 2000 at approximately 11:00 p.m. On that evening, Donald King, his girlfriend, Jacqueline Hayes, and his infant son pulled into a parking lot near the playground located at East 40 Street and Quincy Avenue in Cleveland, Ohio. As King pulled into the parking lot, he noticed that his brother, Donnell King, was involved in a fight with several other individuals.
 {¶ 3} The fight allegedly occurred when Donnell King, Antonio Williams, and Rick (last name unknown) confronted the victim, Lamar Parker, at the playground. Words were exchanged between the individuals and a fight ensued.
 {¶ 4} At trial, the victim testified that Williams struck him with a bicycle seat, and Donnell King and Rick began to repeatedly punch him. In an effort to fend off his attackers, the victim dropped to the ground and into the fetal position to protect his body. He further testified that Donald King arrived after the beating had begun and punched him numerous times in the head even though the victim was unable to defend himself.[1]
 {¶ 5} After the attack, the victim managed to stumble to his mother's home. An EMS unit arrived at the home and transported him to St. Vincent Charity Hospital for treatment. He remained in the hospital's intensive care unit for the next four days. Thereafter, he was released from the hospital with a diagnosis of blunt head trauma and acute otitis media.[2] In addition, the victim has reduced sight and hearing capabilities as a result of his injuries.
 {¶ 6} King presents four assignments of error for this court's review. For the following reasons, the appeal is not well taken.
 {¶ 7} The appellant's first assignment of error states:
 {¶ 8} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT HE CAUSED SERIOUS PHYSICAL HARM TO LAMAR PARKER."
 {¶ 9} Under Crim.R. 29, a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. "A motion for judgment of acquittal under Crim.R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 18, 23.
 {¶ 10} Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See, State v. Bell (May 26, 1994), Cuyahoga App. No. 65356. In State v. Jenks (1991), 61 Ohio St.3d 259, 273, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence to support a conviction:
 {¶ 11} "[T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Eley [(1978), 56 Ohio St.2d 169]. See, also, Jackson v. Virginia
(1979), 443 U.S. 307; 99 S.Ct. 2781; 61 L.Ed.2d 560.
 {¶ 12} Essentially, the appellant claims that the injuries suffered by the victim did not constitute serious physical harm. The appellant was found guilty of felonious assault, in violation of R.C.2903.11. In order to sustain the guilty finding, the state must prove the following:
 {¶ 13} "2903.11 Felonious assault.
 {¶ 14} "(A) No person shall knowingly do either of the following:
 {¶ 15} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 16} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 17} R.C. 2901.01(5) defines "serious physical harm to persons" as follows:
 {¶ 18} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 19} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 20} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 21} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 22} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 23} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 24} In reviewing the evidence, record and testimony at the lower court, it is clear that the lower court was correct in denying the appellant's motion for acquittal under Crim.R. 29. The testimony of the victim concerning the nature of his injuries included the following facts:
 {¶ 25} 1. The victim spent four days in the intensive care unit at St. Vincent Charity Hospital;
 {¶ 26} 2. The victim was unconscious for a significant period of time;
 {¶ 27} 3. The victim's eyes were swollen shut with blood clots for a significant duration of time;
 {¶ 28} 4. The victim received a half-inch scar above his left eye;
 {¶ 29} 5. The victim's vision was reduced to 75 percent as a result of the attack;
 {¶ 30} 6. The victim's hearing was reduced to 65 percent as a result of the attack;
 {¶ 31} 7. The victim continues to have breathing problems because of scar tissue and stitch marks across his nose as a result of the attack;
 {¶ 32} 8. The victim's brain swelled and he suffered from migraine headaches for up to five months as a result of the attack.
 {¶ 33} In reviewing the victim's medical records, the nature of his injuries included the following:
 {¶ 34} 1. At the emergency room, the staff observed that the victim was unconscious, bleeding from the right ear, swelling in the face, a 1.5 centimeter laceration above the left eyebrow, trauma around the head and neck, and eyes swollen shut;
 {¶ 35} 2. Nurses' notes from July 3, 2000, reflect serious drainage from the victim's right ear;
 {¶ 36} 3. On July 3, 2000, hospital staff further noted a 3-centimeter-by-3-centimeter right parietal hematoma on the victim's scalp;
 {¶ 37} 4. On the date of discharge, the medical staff formally diagnosed the victim with blunt head trauma and acute otitis media.
 {¶ 38} The appellant argues that the injuries suffered by the victim do not rise to the level of "serious physical harm," which is necessary for a finding of guilt. This argument is without merit in light of the above noted injuries suffered by the plaintiff.
 {¶ 39} It is clear that the victim suffered "serious physical harm," as defined in R.C. 2901.01(5). The victim suffered from a partial incapacity in losing portions of his ability to hear and see due to the attack. Additionally, the victim suffered numerous bruises and lacerations, some of which are of a permanent nature. Last, the victim continues to suffer from swelling, migraine headaches, and emotional fear associated with the attack by the appellant and his cohorts. Moreover, the duration of the beating and the resulting hospital stay of over four days further highlights the severity of the attack.
 {¶ 40} Simply, there is no evidence in the record which would indicate that the lower court erred in denying the appellant's Crim.R. 29 motion for acquittal in light of the severity and intensity of the injuries suffered by the victim. Therefore, the appellant's first assignment of error is not well taken.
 {¶ 41} The appellant's second assignment of error states:
 {¶ 42} "II. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 43} The proper test to be utilized when addressing the issue of manifest weight of the evidence is set forth in State v. Martin (1983),20 Ohio App.3d 172. The Martin court stated:
 {¶ 44} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * *" See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. State v. Martin, supra, at 175.
 {¶ 45} Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
 {¶ 46} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court, in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include:
 {¶ 47} 1. Knowledge that even a reviewing court is not required to accept the incredible as true;
 {¶ 48} 2. Whether evidence is uncontradicted;
 {¶ 49} 3. Whether a witness was impeached;
 {¶ 50} 4. Attention to what was not proved;
 {¶ 51} 5. The certainty of the evidence;
 {¶ 52} 6. The reliability of the evidence;
 {¶ 53} 7. The extent to which a witness may have a personal interest to advance or defend their testimony; and
 {¶ 54} 8. The extent to which the evidence is vague, uncertain, conflicting or fragmentary.
 {¶ 55} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt.State v. Eley (1978), 56 Ohio St.2d 169.
 {¶ 56} To an extent, in his second assignment of error, the appellant has simply reasserted the arguments which he presented in his first assignment of error to this court. In addition to the previously asserted arguments concerning the nature of the injuries suffered by the victim, the appellant further contends in this assignment that the victim could not identify him as an attacker and that the testimony of his girlfriend, Hayes, highlighted the fact that the appellant was not the aggressor, but that he attempted to stop the fight.
 {¶ 57} In reviewing the record, we cannot agree with the appellant's assertion that his conviction was against the manifest weight of the evidence. Ample evidence exists, as previously highlighted, which justified the appellant's conviction. Moreover, the record is clear that the victim was able to identify the appellant as one of his attackers even though it was late in the evening and the victim had been beaten viciously to the ground.
 {¶ 58} The court, when reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeTibbs v. Florida (1982), 457 U.S. 31, 38, 42. Simply, we cannot conclude that the jury lost its way. The evidence weighs heavily against a reversal and a new trial. As such, the appellant's second assignment of error is without merit.
 {¶ 59} The appellant's third assignment of error states:
 {¶ 60} "III. THE TRIAL COURT ERRED BY NOT CONSIDERING THE IMPOSITION OF THE MINIMUM PRISON SENTENCE PURSUANT TO R.C. 2929.14(B)."
 {¶ 61} In his third assignment of error, the appellant argues that the lower court erred in failing to sentence him to the minimum sentence. R.C. 2929.14(B), reads:
 {¶ 62} "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 63} The Ohio Supreme Court addressed this issue in State v.Edmonson (1999), 86 Ohio St.3d 324, 326, where the court held:
 {¶ 64} "We construe [R.C. 2929.14(B)] to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence. R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. By contrasting this statute with other related sentencing statutes, we deduce that the verb "finds," as used in this statute, means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons.
 {¶ 65} In light of the above, we can only conclude that the lower court erred in sentencing the appellant to three years of incarceration. Granted, the appellant had a juvenile record, a felony record, and at the time of this offense the appellant was on probation. Nevertheless, the lower court failed to find on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender or others. R.C. 2929.14(B). Therefore, this court is left with no other recourse but to vacate the previously imposed sentence and remand to the lower court for resentencing consistent with S.B. 2. As such, the appellant's third assignment of error is well taken.
 {¶ 66} The appellant's fourth assignment of error states:
 {¶ 67} "IV. THE APPELLANT WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF HIS OHIO AND UNITED STATES CONSTITUTIONAL RIGHTS BECAUSE OF THE TRIAL COURT'S FAILURE TO PROVIDE A COMPLETE RECORD OF THE PROCEEDINGS."
 {¶ 68} Here, the appellant argues that the record before this court is incomplete because certain exhibits are missing and, to date, have not been located despite the efforts of appellant's counsel. The appellant points to the missing medical records of the victim, a Joint Exhibit. The appellant proffers that he attempted to locate said records through both the appeals and trial court clerks' offices, the court reporter's office, and the prosecutor's office. Although counsel for the appellant was eventually able to obtain a copy of the medical records from the prosecutor's office, the original record admitted at trial has not been located.
 {¶ 69} Granted, the medical records he received are a copy of those previously admitted at trial. Nevertheless, the appellant provides no reasoning as to how he was prejudiced by this in preparing the instant appeal. He presents no analysis or explanation as to how the records, being a copy, have materially prejudiced the preparation of the instant appeal. Nor does he point to any case law which would tend to lead this court to believe that the failure to obtain a true copy of the victim's medical record was in some manner prejudicial. Moreover, in addition to the transcript, this court relied on the very same copied record in reaching its decision and, notably, we find no discrepancy. As such, the appellant's fourth assignment of error is without merit.
Judgment Affirmed and cause remanded for resentencing.
ANN DYKE, J., CONCURS.
 TIMOTHY E. McMONAGLE, A.J., CONCURS IN JUDGMENT ONLY.
KEY WORDS:
Felonious Assault; Motions, Acquittal; Sentence, Punishment, Other.
[1] The appellant alleges that he did not strike or hit the victim; rather, he attempted to break up the fight by pulling the other aggressors off the victim.
[2] Acute otitis media (AOM) is an infection that involves the middle ear. The tympanic membrane becomes inflamed and opaque. Blood vessels to the area dilate. Fluid accumulates in the middle ear space. AOM is usually associated with infection by viruses or bacteria, although in some cases, an infecting pathogen cannot be identified. University of Texas Medical Branch, Acute Otitis Media,http://atc.utmb.edu/aom/home/html.